**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Franke Eugenio MARTINEZ, Defendant-Appellee.**

No. 82–1353.

United States Court of Appeals, Tenth Circuit.

June 24, 1982.

Rehearing Denied Aug. 4, 1982.

---

Barry R. Elden, Asst. U. S. Atty., Chicago, Ill., Specially appointed to the Dist. of Colo. (Robert N. Miller, U. S. Atty., Denver, Colo., Walter Jones, Jr., Asst. U. S. Atty., Chicago, Ill., Specially appointed to the Dist. of Colo., Robert T. McAllister, Asst. U. S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellant.

Kenneth A. Padilla, Denver, Colo. (Walter L. Gerash, Denver, Colo., with him on the brief), for defendant-appellee.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

PER CURIAM.

This cause is before us on the appeal of the government from a ruling of the district court on questions of admissibility of evidence. The appeal is prosecuted pursuant to 18 U.S.C. § 3731. The evidence in question, which was excluded, alleged similar offenses by the defendant together with evidence of flight soon after the alleged commission of the offense.

The case has to do with the sending of explosives through the mail contrary to 18 U.S.C. §§ 1716 and 2. Also included are firearm violations under 26 U.S.C. §§ 5861 and 5871. The original indictment which was returned on November 9, 1973, contained seven counts. The allegation was that on November 9, 1973 the defendant sent through the mail three bombs addressed to Robert Crider, a member of the Denver School Board, Carol Hogue, a policewoman, and the Two Wheeler motorcycle shop in north Denver. Prior rulings by the district court required that the defendant be tried separately for each of the three bomb sending incidents.

The subject matter of the present trial is the explosives which were sent to the Two Wheeler motorcycle shop. Prior to the presentation of the present problems the plan was to start the trial March 29, 1982. On January 29, 1982 the defendant filed a motion seeking clarification. He sought to have all of the evidence concerning the bomb which was sent to Crider and explosives which were sent to Carol Hogue excluded from the trial of the Two Wheeler incident.

In two separate orders the trial court ruled that no evidence could be introduced on any counts which were not being tried on March 29, 1982. In a hearing held on February 12th defendant's counsel stated that in one of the two orders of February 4th, on which date the original ruling of the trial judge was given, there was a typographical error which referred to the counts set for trial as "three" counts instead of two. The court corrected the error by interlineation.

Both parties have raised the question of the scope and significance of the February 4th ruling. At its February 12th hearing the court reiterated its position that no evidence of similar acts under Rule 404(b) would be permitted in the prosecution's case or in rebuttal but said that if the defendant opened the door as to similar acts, the government, in fairness, would have the opportunity to rebut it. The trial court made this clarification of the February 4th ruling, but only as an explanation of the opportunity to rebut once the door was opened.

The government filed a motion on March 10, 1982 in which it sought reconsideration by the trial court of its ruling excluding the similar acts. The trial court considered this motion in a hearing on March 12 and denied the motion for reconsideration by a written order on March 16th. On March 24 the judge commented that the government's motion for reconsideration was untimely. The notice of appeal on behalf of the government was filed on March 22, 1982. The certification by the district attorney pursuant to 18 U.S.C. § 3731 was also filed on March 22nd.

## THE ISSUE AS TO TIMELINESS OF THE APPEAL

The authorization for the appeal of interlocutory orders in criminal cases is given in 18 U.S.C. § 3731. This provides in pertinent part as follows:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Also included is the requirement "that the appeal shall be taken within thirty (30) days after the decision, judgment or order has been rendered and shall be diligently prosecuted."

■ The right to appeal is strictly circumscribed by the statute in question. The question is whether the appeal was taken within thirty days of the interlocutory decision. In addition Rule 4(b) of the Federal Rules of Appellate Procedure supplements § 3731. That provides that the government must file its notice of appeal in the district court "within thirty days after the entry of the judgment or order appealed from. A judgment or order is entered within the meaning of this subsection when it is entered on the criminal docket."

The government contends that it is appealing from the trial court's denial of the motion to reconsider which was entered on March 16. The government asserts that this March 16 order is the only final order on similar acts and its appeal six days later is thus timely. We disagree. Our conclusion is that the final order was entered on February 4th, 1982 and that the time commenced to run on that date.

Appellant also claims that the motion to reconsider tolled the thirty day period because it was filed within thirty days from the time the district court corrected its February 4th order on February 12th. The third point on behalf of the government is that the thirty day limitation in § 3731 is not jurisdictional.

## THE FINALITY OF THE ORDER AND LACK OF TIMELINESS

■ The notice of appeal filed March 22, 1982 is not timely for the reason that the final order was entered on February 4, 1982. There is not the slightest ambiguity with respect to this final order being the first and final order which was entered. The February 4th decision plainly excludes the similar acts evidence.

In the order with the typographical error mentioned above the court stated that "[n]o evidence concerning acts not charged in the specific three counts of the indictment to be tried will be admitted and therefore no instructions will be given to the jury about any matters which are not contained in the evidence." A second order of the same date given by the trial court, in responding to the defendant's motion for clarification stated that "[t]he prosecution is ordered not to mention or otherwise introduce evidence regarding any counts that have been dismissed or any counts which are not being tried at the trial commencing March 29, 1982." This served as an entry of a judgment ruling out the other counts. Because the number "three" was changed to "two" in the first order is not to be considered as a tolling of the notice period until February 12th, at which time the change was made. *See United States v. 1,431.80 Acres of Land,*

466 F.2d 820, 822 (8th Cir. 1972) (per curiam); *Albers v. Gant*, 435 F.2d 146 (5th Cir. 1970).

The government seeks to overcome this argument. It does so by contending that the trial court was considering "changing its mind" at the hearings of February 12 and March 11 and 12 and that thus the February 4 order was not the order which had to be appealed. The answer to this is that at the February 12th hearing it was defense counsel who pointed up the error in referring to the counts to be tried on March 29th as numbering three instead of two. The government did not claim to have any misunderstanding as to which counts were to be tried and which counts were to be excluded. Furthermore, at this February hearing after the court summarized its ruling of February 4, including the exclusion of similar acts evidence, the government was asked if the summary met with the government's understanding of those orders and the United States attorney who was before him acknowledged his concurrence. So this colloquy did not create a new occasion for the recommencing of the running of the time.

■ The only colloquy that could remotely be regarded as some kind of reconsideration of the February 4 order occurred over the scope of the exclusion. Counsel for both sides acknowledged that the February 4 order excluded evidence from the case-in-chief. Nevertheless defense counsel wanted an ironclad assurance that such evidence would be excluded from government rebuttal. The court clarified that by saying what is "true in every case", that if the defendant opens the door to the similar acts evidence the government can come forward with rebuttal evidence. This is not a reopening, nor is it an amendment to the earlier order. The court was merely giving an explanation of what counsel on both sides knew from long-established trial practice.

The government is here appealing the trial court's exclusion of the similar acts from its case-in-chief, an order which was plainly made on February 4th. No modification of this occurred on February 12th or any date, including March 11th and 12th or March 16th. From February 4th onward the government reasonably should have been aware that the court intended to keep out evidence of the Hogue and Crider bombs from the March 29th trial. *See Moorer v. Griffin*, 575 F.2d 87 (6th Cir. 1978). The time to appeal then necessarily ran from the moment the clerk entered judgment and the order, even though the trial court later discussed the matter and clarified the original judgment.

As far as the trial judge was concerned he was free to modify or even reverse his February 4th order. He had the power to reconsider his prior rulings up until and including the trial. The final order had already been given from the standpoint of the government. *See Zimmern v. United States*, 298 U.S. 167, 169–70, 56 S.Ct. 706, 707, 80 L.Ed. 1118 (1936); *United States v. Emens*, 565 F.2d 1142 (9th Cir. 1977).

In sum "[w]hen the trial judge acts in a manner which clearly indicates his intention that the act shall be the final one in this case, and a notation of the act has been entered on the docket, the time to appeal begins to run." *Rubin v. United States*, 488 F.2d 87 (5th Cir. 1973). Our conclusion is that, according to the docket entry of February 4, the order of that date and the subsequent treatment given by the court and the parties adds up to the conclusion that the ruling which was made on February 4th was the judgment of the trial court and the final one on this issue and that the time started to run from that point on and it was not later reopened.

### THE QUESTION CONCERNING RECONSIDERATION

The government had sought to revive its appeal of this ruling by pointing to its motion for reconsideration which was filed March 10th, but this was long after the thirty days had run from the February 4th ruling. There is no rule of criminal procedure, it is true, nor appellate procedure which speaks on the subject of the timeliness of such a motion. *United States v. Jones*, 608 F.2d 386 (9th Cir. 1979). In

*United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), the Supreme Court spoke with clarity on this entire subject. It ruled that a timely petition for rehearing before the court tolled the thirty day period in which to seek review in the Supreme Court and that the thirty day period began anew from the moment the motion was ruled upon. The Court also made it plain that such a motion has to be filed within the period given for review before the court, that is to say thirty days. Later and indeed quite recently this view was extended in *United States v. Dieter,* 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976). This latter decision was in answer to an appeal in the circuit court pursuant to § 3731.

■ Numerous decisions have found the government's interlocutory appeal to be timely pursuant to § 3731 when a motion for rehearing or reconsideration was filed within thirty days following the order appealed from. Then the notice of appeal must be filed within thirty days after the ruling on that motion. *See, e.g., United States v. Sullivan,* 625 F.2d 9 (4th Cir. 1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1374, 67 L.Ed.2d 352 (1981); *United States v. Bulgier,* 618 F.2d 472 (7th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 51 (1980); *United States v. Walker,* 601 F.2d 1051 (9th Cir. 1979); *United States v. Woodruff,* 596 F.2d 798 (8th Cir. 1979); *United States v. Emens,* 565 F.2d 1142 (9th Cir. 1977); *United States v. St. Laurent,* 521 F.2d 506 (1st Cir.1975), *cert. denied sub nom, Venios v. United States,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). No such timely motion for reconsideration was filed by the government. From a study of these authorities it has to be concluded that a motion for reconsideration does not bring new life to an order unless it is filed within the thirty day period for taking the appeal running from the date of the entry of the judgment or order appealed from.

■ In the case at bar the order which was being appealed from was entered on February 4th. The government waited thirty-four days until March 10th to file its motion for reconsideration. As we have seen from *United States v. Healy,* the mo-

tion for reconsideration has to be filed within thirty days following entry of the order or judgment. The motion for reconsideration did not breathe new life into the order which was entered more than thirty days before the filing of the motion for reconsideration.

The motion for reconsideration itself cannot be considered differently. It is regarded as any post-trial motions. It is not new; it is a traditional one. *United States v. Healy,* 376 U.S. 75, 79, 84 S.Ct. 553, 556, 11 L.Ed.2d 527 (1964). In *Browder v. Director Department of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978) the Supreme Court recognized that an untimely request for rehearing does not toll the running of the government's appeal period. Rule 4(b) of the Rules of Appellate Procedure includes appeals of criminal cases and states that "when an appeal by the government is authorized by statute, the notice of appeal *shall* be filed in the district court within thirty days after the entry of the judgment or order appealed from" (emphasis supplied). It goes on to say that "a judgment or order is entered within the meaning of the subdivision when it is entered in the criminal docket." It further states that "upon a showing of excusable neglect the district court may, before or after the time has expired with or without motion or notice, extend the time for filing a notice of appeal for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this subdivision." The record does not show that any such request was made in this instance.

Thus the rule sets a definite point in time when litigation shall be at an end unless, within that time, the prescribed application has been made and if it has not, to advise the respective appellees that they are freed of the appellant's demands. *Browder, supra* at 264, 98 S.Ct. at 560, *citing Matton Steamboat Co. v. Murphy,* 319 U.S. 412, 415, 63 S.Ct. 1126, 1128, 87 L.Ed. 1483 (1943).

■ A post-trial motion which tolls the appeal period must itself be timely filed. *Gulf-Tampa Drydock Co. v. Vessel Virginia Trader,* 435 F.2d 150 (5th Cir. 1970); *Albers*

v. *Gant*, 435 F.2d 146 (5th Cir. 1970). This reasoning must extend as well to the filing of a motion for reconsideration where there are no extraordinary circumstances giving rise to excusable neglect.

The government did not seek an extension of time for filing notice of appeal pursuant to Rule 4(b).

■ The law is plain in this circuit that the mere acceptance and filing of the notice in the district court on March 10th is not an implicit grant by the district court of the additional thirty days. *United States v. Lucas*, 597 F.2d 243 (10th Cir. 1979). Nor is remand automatically given to allow appellant to make a showing of excusable neglect before the district court. Those courts that have shown some leniency and flexibility in the application of Rule 4 have been concerned with the problems that the pro se defendant faces; the government is expected to conduct itself on a higher level. *See Fallen v. United States*, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964); *United States v. Ford*, 627 F.2d 807 (7th Cir.), *cert. denied*, 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980).

■ Finally we consider the government's final argument that the thirty day limit contained in § 3731 is not jurisdictional. This assertion must be rejected. A single footnote in the opinion in *United States v. Humphries*, 636 F.2d 1172 (9th Cir. 1980), *cert. denied*, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981), makes this claim based upon *Meier v. Keller*, 521 F.2d 548, 553 (9th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976). In *Meier* the court articulated the often applied rule that the government's failure to file the certification that § 3731 requires within thirty days does not destroy appellate jurisdiction. It was, however, referring to the duty imposed on the U.S. attorney under § 3731 and not the filing of the notice of appeal. The Act does not set a time limit within which to file this certificate that the appeal is not being taken for purposes of delay. *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960).

■ Inasmuch as the necessity for acting is jurisdictional this court has no alternative. It must deny the appeal insofar as the admission of the similar offenses is concerned. This ruling does not effect the issue of flight.

The motion for reconsideration in connection with the issue raised on this appeal was filed more than thirty days after the § 3731 notice of appeal was to be filed. Because of this late filing, the limitation was not tolled. The decisions of the Supreme Court in *Healy* and *Dieter* require this court to dismiss the appeal of the February 4 order excluding evidence of the Hogue and Crider bombs from the trial on the Two Wheeler bomb that is to follow.

In view of our ruling regarding the failure to preserve the time limits on appeal with respect to the similar offenses, we need not consider the merits having to do with the admissibility of this evidence and we now proceed to consider the question as to whether the court erred in ruling out the flight evidence.

## THE EVIDENCE AS TO FLIGHT AND WHETHER IT SHOULD BE RECEIVED

The government's appeal from the exclusion of flight order is proper and does not suffer from the deficiencies present in the similar offense problem.

The appeal of the final order of the district court precluding flight was carried out within the required 30 day period. Therefore, we proceed to the merits of the flight question.

Government witnesses testified at the motion hearing that the defendant Martinez abruptly left Colorado soon after several mail bombs were discovered on October 27 and 30, 1973. The government argues that Martinez simply fled, abandoning his family and his law practice after hearing news reports which named him as a suspect and indicated that a warrant had been issued for his arrest. A federal postal inspector testified at the hearing that he telephoned Martinez's father on October 30, 1973, in order to notify him of the outstand-

ing warrant and to inquire about Martinez's whereabouts. Martinez's father told the inspector that he had no knowledge of his son's location. During the weeks that followed investigators contacted other relatives and acquaintances of Martinez and occasionally watched their residences. But this was to no avail. A local priest told one investigator that Martinez's brother had asked him for money for Martinez's flight or defense, threatening to burn down the church if none was forthcoming. A poster showing the photograph and fingerprints of Martinez was distributed to law enforcement agencies around the country. Numerous leads were received but none of these produced any useful information. Surveillance was conducted at places that Martinez had frequented but this was also without success. Undercover agents attended events such as the defendant's brother's funeral in May 1974, and his mother's funeral in October, 1975 but were unable to find any traces of him. Martinez did not maintain his attorney registration and driver's license. He allowed them to expire in 1975 and 1976, respectively.

It was not until September 3, 1980 that his whereabouts became known. On that day he appeared at the Nogales, Arizona port of entry into the United States. There he told the customs inspector that he was a citizen of the United States and that his name was Jose Reynoso-Diaz, that he lived in Des Moines, Iowa, and that he worked at the John Deere plant there putting ball bearings into power take-off units. Martinez made a customs declaration of one blanket and some toy airplanes. The inspector admitted Martinez as a citizen, and commenced a luggage search. When the inspector pulled a manicure kit from Martinez's backpack and opened it, she discovered a Mexican passport in the name of Reynoso-Diaz. At that point Martinez bolted out of the room, running north into the United States. He was apprehended after a brief struggle. After that his luggage was searched and included in it was a card indicating that he had served in the Mexican army. Luggage tickets indicated that he had flown to Cuba. He was then charged with illegal entry into the United

States and his belongings were returned to him. During a subsequent interview with customs officials, Martinez refused to speak English, and indicated an inability to sign his name.

On September 12, 1980 Martinez appeared before a United States Magistrate and pleaded guilty to a charge of evading inspection. After that deportation proceedings were initiated. Subsequently his true identity was discovered through fingerprint evidence. He was then returned to Colorado to stand trial.

Following the presentation of the above testimony, the trial court ruled that evidence of flight would be inadmissible at trial. The court relied on *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977), which set down a four part test for evaluating the probativity of flight evidence by assessing the relevant inferences. The inferences mentioned in the *Myers* case are (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. 550 F.2d at 1049. The court ruled that the last three of the four inferences bearing on the probative value of flight evidence as circumstantial evidence of guilt were particularly weak in this case and that was the basis for the ruling. It concluded that under Fed.R.Evid. 403 the probative value of the evidence of Martinez's flight was outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, and waste of time.

In the *Myers* case the defendant had been at large for some period of time following the commission of a bank robbery in Florida. In the meantime he was suspected of having committed an additional bank robbery in another state. The Fifth Circuit decided "the theory under which evidence of flight is admitted presumes that consciousness of guilt concerning the Pennsylvania robbery could be a sufficient cause of flight." 550 F.2d at 1050. The court reasoned that doubt existed as to which rob-

bery caused the flight. Thus, it was impossible to say whether the flight resulted from feelings of guilt attributable to the Florida or the Pennsylvania robberies or from consciousness of guilt about the Pennsylvania robbery alone. "Therefore, even if Myers did flee from the federal agents in California, no inference that he was guilty of the Florida robbery is possible. It was error for this reason also to instruct the jury that they could draw such an inference." *Id.*

In the instant case none of these doubts are present. For that reason we are unable to agree with the trial court that the standards set up by the Fifth Circuit were not satisfied. Moreover we need not follow those standards. Our facts are sufficient to give rise to the inference of guilt. In our view the facts as a whole are of importance. Here the defendant abandoned his home and his law practice. He travelled to Mexico and Cuba and was gone for seven years. He even joined the armed forces of Mexico. He sought to make a reentry into the United States under a false name and passport. All of these background facts are the important features. It cannot be said that he did not quickly depart when he heard that a warrant had been issued with respect to the bomb case. We are unable to see the relevancy of the *Myers* case.

## DISCUSSION OF ADMISSIBILITY OF FLIGHT EVIDENCE

Traditionally flight has been viewed as an admission by conduct which expresses consciousness of guilt. McCormick, Handbook of the Law of Evidence § 271 at 655 (2d ed. 1972). Vol. II, J. Wigmore on Evidence, Chadbourn Rev., contains some general summary material which is worth examining. Section 276 reads as follows:

Flight from justice, and its analogous conduct, have always been deemed indicative of a consciousness of guilt. "The wicked flee, even when no man pursueth; but the righteous are bold as a lion." In our primitive system of law, the accused who fled, whether innocent or guilty, suffered forfeiture and escheat; though this was rather a mode of deterring him from refusing to appear for judgment than an evidential rule.

It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.[1]

Inasmuch as the probativity of flight evidence depends upon inferences it is thus circumstantial in its nature. An inference must logically follow from the activity of the defendant. If flight evidence does not give rise to a valid conclusion of guilt there is good basis for arguing that it is inadmissible. Such is not the case in the present situation.

■ There is a lengthy history behind the admission of conduct showing consciousness of guilt. McCormick, Handbook of the Law of Evidence § 271 at 655 (2d ed. 1972). As such, flight evidence carries with it a strong presumption of admissibility. *See, e.g., Allen v. United States*, 164 U.S. 492, 499, 17 S.Ct. 154, 156, 41 L.Ed. 528 (1896), where the court said: "Indeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Id.* at 499, 17 S.Ct. at 156. The cases universally accept this doctrine. *See, e.g., United States v. Greiser*, 502 F.2d 1295, 1299 (9th Cir. 1974); *United States v. Bal-*

---

1. The author further states:

(a) It is occasionally required that the accused should have been aware that he was charged or suspected. This is unnecessary; it is the act of departure that is itself evidential; ignorance of the charge is merely a circumstance that tends to explain away the guilty significance of the conduct.

The limitation has also been advanced that flight is not admissible where the evidence of the offense is direct evidence; but this notion is groundless to the point of absurdity.

(b) It has sometimes been said that an unexplained flight is the admissible evidence. But this is obviously unsound. The prosecution cannot be expected to negative beforehand all conceivable innocent explanations. The fact of flight is of itself significant; it becomes most significant when after all no explanation is forthcoming.

*lard,* 423 F.2d 127, 133 (5th Cir. 1970). It is true also that courts have recognized that persons may leave a jurisdiction for any number of innocent reasons. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n.10, 9 L.Ed.2d 441 (1963), "we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Alberty v. United States,* 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896), "[I]t is not universally true that a man, who is conscious that he has done a wrong, will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper; since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." Due to the fact that flight evidence is sometimes ambiguous, courts at times assert that such evidence is of questionable probative value unless the inferences of guilt that accompany the particular facts associated with it are strong. No one can quarrel with this approach. *See, e.g., United States v. Corbin,* 253 F.2d 646, 650 (10th Cir. 1958); *United States v. Jackson,* 572 F.2d 636, 640 (7th Cir. 1978), which emphasize the necessity for examining the probative value of the flight evidence prior to admitting it. *See United States v. Peltier,* 585 F.2d 314, 323 (8th Cir. 1978). A court generally will scrutinize the facts of each case to determine whether the jury should be given an opportunity to draw on inference of guilt from the defendant's flight.

Because of the strength of the rule of admissibility of flight evidence, few cases are to be found in which the evidence is excluded by the trial court. One such case is *United States v. Bowling,* 666 F.2d 1052, 1056–57 (6th Cir. 1961). In *Bowling* the trial judge originally admitted flight evidence, but later decided to suppress it because of the lack of strength of the inference of guilt. The Sixth Circuit found no error in admission of the evidence followed by an instruction to disregard it. Another case is *United States v. Jackson,* 405 F.Supp. 938, 944–45 (E.D.N.Y.1975). In the *Jackson* case Judge Weinstein ruled that flight evidence would be inadmissible at trial due to prejudicial "other crimes" evidence associated with flight; inadmissibility would be conditional, however, on defendant's stipulating that he was arrested in another jurisdiction while using a false name.

Trial courts usually focus not upon the admissibility of flight evidence but upon the propriety of including a jury instruction highlighting already admitted flight evidence. *See Bailey v. United States,* 410 F.2d 1209, 1217 (10th Cir. 1969). This circuit there held that an instruction on flight evidence was proper. The courts of appeals, however, have frequently ruled on the admissibility of flight evidence. Though the question is usually resolved in the affirmative, courts have sometimes held that flight evidence was improperly admitted *due to certain facts* which detracted from its probative force. *See, e.g., United States v. Nolan,* 450 F.2d 934, 935 (10th Cir. 1971) (federal charge from which defendant supposedly fled was not instituted until months after his flight); *United States v. White,* 488 F.2d 660, 662 (8th Cir. 1973) (flight from attempted arrest occurred five months after the crime); *United States v. Jackson,* 572 F.2d 636, 641 (7th Cir. 1978) (flight occurred a substantial time after the crime; no showing that defendant knew he was accused or sought for the crime); *United States v. Howze,* 668 F.2d 322, 324–25 (7th Cir. 1982) (defendant was arrested in another jurisdiction four and one-half months after the crime; there was no showing as to when he left the subject jurisdiction, nor was there evidence as to his knowledge that he was being sought for the crime; the cause was remanded for a reconsideration of a motion to suppress).

The case at bar bears no resemblance whatsoever to *Nolan, White, Jackson* and *Howze.* In this case Martinez had to know at the time of his flight that he was sought in connection with the crime for

**1258**

which he is now being tried. The discovery of the mail bombs and identification of Martinez as a suspect were given a great deal of media coverage at the time that Martinez disappeared. Also Martinez's flight occurred within a matter of days after the crime, unlike the flight episodes in the cases in which the court expressed doubt about the evidence. It is true that there is no evidence in the record as to exactly when Martinez left the jurisdiction. Still it was impossible to find him shortly after the sending of the bombs and after the warrant was issued for his arrest. That is certainly adequate. *United States v. Malizia*, 503 F.2d 578, 582–83 (2nd Cir. 1974). Moreover, the importance of the immediacy of the flight is diminished if there is, as here, other evidence to indicate that the defendant knew he was sought for the crime. *United States v. Jackson*, 572 F.2d 636, 641 (7th Cir. 1978).

In addition some authorities have criticized judicial withdrawals of flight evidence from the jury on the basis of factors like those discussed above. *See generally United States v. Robinson*, 475 F.2d 376, 384 (D.C.Cir.1973) ("the interest of justice is perhaps best served if this matter of flight evidence is reserved for counsel's argument [to the jury], with little, if any, comment by the bench.") The cases include many rejections of the proposition that certain factors may preclude the admissibility of flight evidence. Where a long time had already gone by, the Eighth Circuit noted in *United States v. Blue Thunder*, 604 F.2d 550, 556 (8th Cir. 1979) that remoteness in time was not a basis for exclusion. Similarly, knowledge that the defendant is sought by the authorities is not an essential. *See Shorter v. United States*, 412 F.2d 428 (9th Cir. 1969), where it was said that "*Embree [v. United States*, 320 F.2d 666 (9th Cir. 1963)] does not stand for the proposition that evidence of flight shall not be admitted unless the government, as a condition of admissibility, first lays a foundation that the defendant knew he was being sought for the particular offense charged." Id. at 429–30. *See also United States v. Ayala*, 307 F.2d 574, 576 (2nd Cir. 1962) ("the existence of a

warrant is not a prerequisite to an offer of proof of flight."). Wigmore, § 276 at 122–131, asserts that virtually no factual ambiguity associated with flight should ever suffice to hold it inadmissible; instead, the facts of concern to both sides should be presented to the jury for their resolution. Wigmore goes on to say that the principle of universal admissibility of flight evidence has been sanctioned so many times that its frequent modern repetition has become redundant.

The evidence of flight in the instant case is saddled with none of the facts that might conceivably diminish its probativity, insofar as such factors might be relevant to an admissibility determination. To the contrary, the flight here seems strongly probative of the defendant's guilt. We recognize that initially the matter is properly within the discretion of the trial court. *See United States v. Harris*, 661 F.2d 138, 142 (10th Cir. 1981); *United States v. Nolan*, 551 F.2d 266, 271 (10th Cir. 1977); *United States v. Krohn*, 573 F.2d 1382, 1389 (10th Cir. 1978). The decision of the trial court should not be reversed absent a showing of abuse of discretion.

█ In the instant case, the issue comes to us in an unusual posture, i.e. appeal by the government prior to trial. But a favorable aspect is that we are in a position to carefully consider the surrounding facts and to reach a conclusion that the judgment must be reversed due to the fact that there was an abuse of discretion by the trial court in barring the evidence of flight. Flight is much a part of this case. After all the accused was gone for seven years and it is difficult to see how his absence could be ignored. It is unlikely to fail to find its way into the trial on some ground other than flight.

█ Apart from that it is highly relevant. Also, the state of the law is such that admissibility is a likelihood in the first instance. *See, e.g., Gicinto v. United States*, 212 F.2d 8, 11 (8th Cir. 1954), holding that evidence of flight is always admissible. But, here, it is highly probative. It is similar to *United States v. Jackson*, 405 F.Supp.

938 (E.D.N.Y.1975) wherein Judge Weinstein, the author of Weinstein's Evidence, observed:

> The probative value of defendant's conduct is heightened by the posture of the government's proof. It is apparent that the surveillance photographs and the eyewitness testimony are not likely to make out a completely positive identification of defendant. The government, therefore, has legitimate need for corroborative evidence. On balance, then, the Georgia events have significant probative value.

*Id.* at 944. *See also United States v. Peltier*, 585 F.2d 314, 324–25 (8th Cir. 1978). The Eighth Circuit said "the Advisory Committee in its notes accompanying Rule 403 suggested that in reaching a decision whether to exclude on grounds of unfair prejudice ... the availability of other means of proof may also be an appropriate factor." The fact that the accused may seek to rebut flight evidence in a way that would create new evidentiary problems is not a justification for excluding it, where, as here, it has highly probative value. *Cf. United States v. Boyle*, 675 F.2d 430 at 433 n.3 (1st Cir. 1982). That court said that probative evidence is often admissible even though it reveals other criminality, citing *United States v. Featherton*, 519 F.2d 603, 611 (1st Cir. 1975). The possible answers of the defendant should not be considered. Other approaches such as stipulations can be utilized to ensure that the presentation of flight evidence and rebuttal evidence does not take up a disproportionate amount of time and does not unduly digress from the central issue of guilt or innocence. *See United States v. Peltier*, 585 F.2d 314, 324–25 (8th Cir. 1978). *See United States v. Jackson, supra*, at p. 945.

The ruling on this question must be reversed with directions to the trial court to allow the flight evidence to be received in evidence and considered by the jury.

It is so ordered.

McWILLIAMS, Circuit Judge, specially concurring.

I concur. The government's attempted appeal of the district court's order suppressing use at trial of evidence of other acts or transactions is, under the statute, untimely. However, and admittedly by way of *obiter dicta*, in my view the order of the district court suppressing the use at trial of evidence of other acts and transactions is, under the facts and circumstances of this case, egregiously. wrong. *See United States v. Cotner*, 657 F.2d 1171, 1173 (10th Cir. 1981); *United States v. Van Cleave*, 599 F.2d 954, 957 (10th Cir. 1979); *United States v. Moore*, 556 F.2d 479, 485 (10th Cir. 1977). *Moore*, in particular, is quite similar to the instant case.