# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANIEL ANDRES MORONES,

Defendant-Appellant.

Nos. 11-1579 & 11-1580
D.C. Nos. 1:09-CR-00261-JLK-1
& 1:09-CR-00301 – JLK-1)
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **MATHESON,** Circuit Judge, and **JOHNSON,**[**] District Judge.[***]

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Honorable William P. Johnson, United States District Judge, District of New Mexico, sitting by designation.

[***] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument.

Defendant Daniel Andres Morones, a federal inmate at the time of the crimes in question, was tried and convicted by a jury for conspiracy to assault another inmate, in violation of 18 U.S.C. § 371, murder in the second degree, in violation of 18 U.S.C. §§ 1111(a) and 2(a), and possession of contraband in prison, in violation of 18 U.S.C. § 1791(a)(2) and (b)(3).  After the incident that gave rise to those charges, Morones was also indicted on numerous counts of assault on a federal officer of employee (prison guards), in violation of 18 U.S.C. § 111(a)(1) & (b) and convicted of seven counts. Morones now appeals his convictions.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the judgment in each appeal.

I

*Factual background*

The grim facts relating to the assault and murder by prison gang members against one of their brethren have been detailed in the opinion regarding the appeal of Mark Rosalez, Juan Martin Ruelas, and Justin Hernandez, United States v. Rosalez, --- F.3d ---, 2013 WL 1277004 (10th Cir. 2013).  The facts that relate specifically to Morones are summarized here.  The Sureños, a prison gang, were in a state of disagreement with one member and addressed the matter by planning an assault.  Gang leadership recruited Morones and others to assist.  Morones was the first to enter the victim's cell.  Morones swung his improvised weapon, a padlock attached to a belt, and hit the victim in the face or head.  At some point during the gang beating, the victim slid down to the floor and

2

another attacker said to Morones, "that's enough, estuvo,." But Morones said in response, "[n]ah, not yet." No. 11-1580, ROA, Vol. III at 756). In turn, Morones and a gang colleague continued to beat the victim, and Morones also stabbed at the victim with a mop handle. The victim's cause of death was determined to be an accumulation of blows to the head.

After the victim's body was discovered, the entire facility was locked down so that prison and FBI officials could investigate and search for evidence. Morones was found to have abrasions on the knuckles of his left hand and abrasions on the back side of the base of his right hand, as well as a minor contusion inside of his upper lip, all of which appeared to be fresh. Video footage showed the attackers, including Morones, entering and subsequently exiting the victim's cell. In Morones' cell, prison officials found a pair of boots with blood on them; a pair of damp dishwashing gloves with blood on them; a damp towel with possible blood spots on it; and a shirt with red stains that appeared to be blood spots. A mop handle found in the victim's cell had fingerprints that matched known fingerprints from Morones. DNA testing determined that the blood on the boots found in Morones's cell matched the victim's DNA.

After the murder, prison officials moved Morones to a special housing unit. Prison officials discovered that Morones attempted to cut through his cell window's bars, tossed out a blanket and mattress, tied a sheet around a bar, and kicked out his cell

3

window. Morones scratched his nickname "Primo" on the cell wall in addition to the words "Murder Prime Suspect" and "Mexican Mafia."

*Procedural background*

On October 7, 2009, a federal grand jury returned a superseding indictment against Morones, and other defendants (District Court Case No. 09-CR-301) based on their alleged involvement in the gang murder. Count 1 charged five defendants with conspiracy, in violation of 18 U.S.C. § 371. Dist. Ct. Doc. 99, at 1 (Superseding Indictment, filed on 10/7/09). Count 2 charged five defendants with second-degree murder, in violation of 18 U.S.C. §§ 1111(a) and 2(a). Dist. Ct. Doc. 99 at 4. Count 3 charged Morones with possession of contraband in prison, i.e., "padlocks attached to belts," in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(3). Count 4, attempted escape, was dismissed by the government prior to trial.

Morones moved to sever his trial from the other defendants. The district court severed the counts that are subject of this appeal from the other defendants on April 12, 2011. The trial began in September 2011. At the conclusion of all the evidence, the jury convicted Morones of each of the counts alleged in the superseding indictment related to the gang killing. The district judge sentenced Morones to 420 months (35 years) as a result of the convictions for assault, murder and contraband possession (District Court Case No. 09-CR-301).

4

For Morones' individual assaults against the prison guards after the killing, a federal grand jury charged Morones with nine counts of assault on a federal officer or employee in a second superseding indictment filed on September 27, 2010 (District Court Case No. 09-CR-261 Doc. 116). The district court allowed Morones to proceed to trial *pro se* with advisory counsel. The government dismissed two of the assault counts and the jury convicted Morones of the remaining seven.

The district judge sentenced Morones to 87 months (7.25 years) for the assaults against the prison guards. This 87 month sentence was run consecutive to the 420 month (35 year) sentence for a total term of incarceration of approximately 42 years.

II

*Analysis*

**The District Court Did Not Err In Admitting Other Act Evidence
(09-CR-301, Appeal No. 11-1580)**

At trial, the government sought to introduce evidence of Morones' attempt to escape from prison when he was incarcerated in the special housing unit after the murder, pursuant to Fed. R. Evid. 404(b). The trial court permitted the jury to hear the evidence. Morones asserts that allowing the jury to hear evidence regarding his escape attempt was an abuse of the trial court's discretion. We conclude that the trial court did not abuse its discretion in admitting the evidence.

> To determine if the admission of Rule 404(b) evidence was proper, we apply a four-part test which requires that: (1) the evidence was offered for a proper purpose under Fed.R.Evid. 404(b); (2) the evidence was relevant

5

under Fed.R.Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed.R.Evid. 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted.

United States v. Shippley, 690 F.3d 1192 (10th Cir. 2012).

In this case, the evidence offered satisfies all four prongs. First, the government offered the evidence to show Morones' consciousness of guilt of the murder. Rule 404(b) allows evidence that is admitted to prove knowledge, and escape evidence is probative of consciousness of guilt. United States v. Martinez, 681 F.2d 1248, 1256-57 (10th Cir. 1982) (quotations omitted) ("It is universally conceded today that the fact of an accused's flight, escape from custody . . . [is] admissible and evidence of consciousness of guilt . . . ."). Second, evidence of attempted flight after an alleged crime is relevant, as established in Martinez, 681 F.2d at 1258-59. Third, the probative value of Morones' escape attempt to prove his guilt of the murder was not substantially outweighed by unfair prejudice from that same evidence. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Cerno, 529 F.3d 926 (10th Cir. 2008) (citation omitted). The jury heard detailed evidence of Morones' involvement in a violent gang murder, so it is hard to imagine that the attempted escape evidence would have provoked an emotional response in the jurors that

6

adversely affected their attitude toward Morones.  The jury may have considered the attempted escape to be a relatively minor accusation against Morones in light of the prison murder charges and the jury's implicit knowledge that he previously had been convicted of at least one crime serious enough to land him in federal prison.  Simply stated, while incarcerated on the original conviction that brought him to federal prison, and while on trial for the brutal murder of his fellow gang member, Morones cannot claim that attempted escape evidence caused unfair prejudice.  Fourth, the trial court did instruct the jury that there are reasons consistent with innocence that can cause a person to flee.

Because the admitted evidence conforms to recent controlling  Tenth Circuit precedent, we conclude that the trial court did not abuse its discretion in allowing the jury to hear evidence of Morones' attempted escape.

**The Sentence Imposed for Assault, Murder and Contraband Possession**
**Is Procedurally and Substantively Reasonable**
**(09-CR-301, Appeal No. 11-1580)**

At sentencing, Morones requested a variance based on a disparate sentence compared to the co-defendant who also played a leadership role in the attack.  The trial court denied the variance and imposed a sentence which Morones argues was an abuse of the trial court's discretion.  Morones claims that the sentence imposed is procedurally and substantively unreasonable.  He requested the variance pursuant to 18 U.S.C. § 3553(a) before sentencing, and therefore preserved the procedural reasonableness argument for

review.  United States v. Lopez-Avila, 665 F.3d 1216, 1218 (10th Cir. 2011).  However, in his brief, Morones does not classify his arguments as procedural or substantive as contemplated by Gall v. United States, 552 U.S. 38, 51 (2007) and Morones does not make a clear statement regarding procedural error.  Thus, we address the argument as presented, which is substantive.

The crux of the overall claim appears to be that Morones received a sentence that was only five years shorter than one of the co-defendants who was the gang leader and the one who ordered the beating.  Morones contends that he should have received a sentence that was ten years less than the sentence imposed on the gang leader.  In support of this argument, Morones argues that the trial court failed to apply a sentencing guideline enhancement to the gang leader for being the leader, and then Morones makes the illogical leap that as a follower he should be entitled to a downward variance since the leader did not receive the leadership enhancement under the sentencing guidelines.[1]  In other words, Morones asserts that since the district court made a mistake in calculating the co-defendant's guidelines sentence, Morones should benefit from the same miscalculation in order to avoid a sentencing disparity.  While we do not find Morones' argument to be persuasive, we do find persuasive the reasoning and holding of the

_____

[1] The guidelines state, "Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  U.S.S.G. § 3B1.1.

Eleventh Circuit which recently considered a similar issue: "That a district court may have used the wrong version of the guidelines in a co-defendant's separate sentencing (to the benefit of a defendant) does not make another defendant's sentence under the correct version unreasonable in any way." United States v. McNair, 605 F.3d 1152, 1232 (11th Cir. 2010). Further, as this Circuit has noted, "Put another way, a criminal defendant alleging a disparity between his sentence and that of a co-defendant is not entitled to relief from a sentence that is properly within the sentencing guidelines and statutory requirements." United States v. Davis, 437 F.3d 989 (10th Cir. 2006). "[W]e have repeatedly explained that §3553(a)(6) requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations." United States v. Damato, 672 F.3d 832, 848 (10th Cir. 2012)(quotations omitted; emphasis in original) cert. denied, 133 S.Ct. 319 (2012). "Although it is not improper to consider co-defendant disparity, neither is it mandated." United States v. Rojas, 531 F.3d 1203, 1210 (10th Cir. 2008). The sentence imposed was within the Guidelines range, No. 11-1579, ROA, Vol. II at 550-51, and therefore carries a rebuttable presumption of substantive reasonableness. United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008). Morones has not rebutted this presumption.

After reviewing Morones' brief and the record on appeal, we conclude that there was not any substantive error in the length of the sentence. Morones argues that this Court reverses decisions when the district court is arbitrary, capricious, whimsical or

9

manifestly unreasonable.  United States v. Friedman, 554 F.3d 1301 (10th Cir. 2009).

However, there is not any colorable claim that the sentence here was arbitrary, capricious, whimsical or manifestly unreasonable because the trial court clearly explained on the record how the sentence was calculated.  We find no abuse of discretion by the district court.

**The Sentence Imposed for the Assaults Against Prison Officials**
**Is Procedurally and Substantively Reasonable**
**(09-CR-261, Appeal No. 11-1579)**

Morones asserts procedural error in that the district court denied his request that his sentence for assaults against the prison guards be run concurrent to his sentence for his other crimes.  The defendant's rationale for a concurrent sentence is that he had been housed in the special housing unit after the murder, and the segregated nature of this unit is harmful to inmates.  Morones believes that incarceration in the special housing unit is a non-frivolous reason for requesting a concurrent sentence and as such, the trial court was required to explain its reasoning for denying the request for concurrent sentences. Morones contends that the trial court did not address his argument that time in the special housing unit warranted concurrent sentences, and thus, the district court committed procedural error.  Morones requested the variance pursuant to 18 U.S.C. § 3553(a) before sentencing, and therefore preserved the procedural reasonableness argument for review. United States v. Lopez-Avila, 665 F.3d 1216, 1218 (10th Cir. 2011).

We review sentences, procedurally and substantively, under a deferential abuse of discretion standard, <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007), and conclude that the trial court did not abuse its discretion with regard to the 87-month sentence for the assaults against prison guards. The district court did not commit any procedural error concerning Morones' request for concurrent sentences because the record on appeal establishes that the district court adequately addressed Morones' special housing unit argument. The judge noted that time in the special housing unit was not a relevant sentencing factor and "is not a consideration for me." Sentencing Tr. at 19. Given the lack of logical connection between time in the special housing unit and imposition of sentences for new crimes that occurred during incarceration, there is really nothing more the trial court could have said to provide a rationale for rejecting concurrent sentences. Moreover, considering the vicious and brutal murder for which Morones was convicted, his conviction for assaults on guards and his attempt to escape from prison, it is certainly understandable why Morones was incarcerated in a special housing unit in prison and why the district court did not see fit to run Morones' sentences concurrent to each other.

Regarding substantive error, Morones claims that the district court imposed a substantively unreasonable sentence. The sentence imposed was within the Guidelines range, No. 11-1579, ROA,Vol. II at 549-550, and therefore carries a rebuttable presumption of substantive reasonableness. <u>United States v. Haley</u>, 529 F.3d 1308, 1311 (10th Cir. 2008). Furthermore, the district judge explained that he imposed a sentence on

11

the high end of the Guidelines range due to the multiple assault convictions, rather than imposing a sentence on the low end of the Guidelines range that would be appropriate for a single assault conviction. No. 11-1579, ROA, Vol. II at 550. To rebut the presumption, Morones argues that he is twenty-eight years old, sentenced to over forty-two years in prison, and will not be released until he is seventy years old. His appellate brief states, "[g]iven all of the circumstances of this case, in light of the factors found in 18 U.S.C. § 3553(a), the sentence is excessive." However, Morones' brief does not apply any of the circumstances of this case to the factors in § 3553(a) nor does it provide any specifics to suggest why forty-two years in total is excessive for brutally assaulting and murdering another inmate in prison, for possessing contraband (which was used to kill another inmate), and for repeatedly assaulting prison officials with bodily fluids. In sum, the district court did not abuse its discretion in imposing an 87-month sentence for the multiple assaults against prison guards, which was run consecutive to the 420-month sentence for assault, murder and contraband possession, for a total term of 507 months, or 42 years and 3 months.

**The District Court Did Not Abuse Its Discretion**
**Regarding the Suggestion to Not Object During Closing Argument,**
**Nor Was There Any Prosecutorial Misconduct**
**(09-CR-261, Appeal No. 11-1579)**

Morones, who was *pro se*, alleges two errors related to the prosecutor's closing argument. First, Morones contends that the district court improperly instructed him not

12

to object during the prosecutor's closing. The record on appeal contradicts Morones' characterization of events at trial, and therefore his legal argument based on this erroneous version of events is unpersuasive. As recited in Morones' own brief, the district court said, "it is permissible to make an objection if it relates to something not in the evidence." The court continued to speak about objections during closing argument, but the rest of his comment appeared to be directed to the government, not *pro se* Morones.

> But it is usually considered to be best to – not to object to somebody else's argument, if you can. I mean, if there's a reason for it, yes . . . . but if you pop up and down a lot during somebody else's closing, it tends to aggravate the jury. 'Cause they want to hear what the other person has to say. So think we need to give Mr. Morones a little leeway in his closing argument.

> No. 11-1579, ROA, Vol. II at 440.

There is simply nothing in the record to suggest that the district court told Morones not to object during the prosecution's closing argument so there was no abuse of discretion by the court concerning objections during closing.

Second, Morones argues that prosecutorial misconduct during closing deprived him of a fair trial because the prosecutor referred to Morones' "campaign of terror." Specifically, the prosecutor said,

> you have heard over the last two days about what in essence was a campaign of terror that he, that he engaged in against the BOP officers that [sic] were supervising him. This is not a campaign of terror involving bombs and guns. It was involving the weapons that he had at his disposal which were his fists and were bodily fluids that he used as projectiles.

13

Morones did not object, perhaps because there was not any obvious prosecutorial misconduct in those statements. Since Morones did not object, our standard of review is plain error. United States v. Taylor, 514 F.3d 1092, 1095 (10th Cir. 2008). Simply put, the error is not plain. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Taylor, 514 F.3d 1092, 1100 (10th Cir. 2008). The prosecutor's reference to a "campaign of terror" does not satisfy this test.

Morones attempts to circumvent the plain error standard of review by arguing that he did not object to the prosecutor's "campaign of terror" comment because the district court instructed him not to object. If that were the case, the standard of review for prosecutorial misconduct would be *de novo* as mixed question of law and fact. United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996). As discussed above, we concluded that there is not any merit in the claim that the district court instructed him not to object and thus Morones' argument for a more favorable *de novo* standard of review is built on a faulty foundation. But even if we were to apply a *de novo* standard of review to the prosecutor's comment, Morones has not persuaded us that the prosecutor's closing argument was improper and deprived him of a fair trial. Stating "what in essence was a "campaign of terror" against prison guards and then quickly clarifying that it was not a campaign of bombs and guns but one with fists and bodily fluids seems unlikely to

14

inflame jurors given the other evidence they heard regarding murder and assault. Because we determine that the prosecutor's closing was not improper, we need not determine whether the error was harmless beyond a reasonable doubt. United States v. Irvin, 682 F.3d 1254, 1275 (10th Cir. 2012). In sum, there was not any prosecutorial misconduct regardless of the standard of review.

**The Two Level Enhancement For Bodily Injury Was Properly Applied**
**(09-CR-261, Appeal No. 11-1579)**

Finally, Morones contends that the trial court incorrectly enhanced Morones' sentencing guidelines base offense level by two additional levels for bodily injury against the prison guards. He requests that his case be remanded for resentencing without the two level enhancement.

Under the United States Sentencing Guidelines, bodily injury is "any significant injury, e.g. an injury that is painful and obvious, or is a type for which medical attention ordinarily would be sought." U.S.S.G § 1B1.1 , comment n.1(B). At trial, a prison guard testified to the pain he experienced when Morones punched him in the face, which satisfies the painful part of the definition. The guard explained that his family immediately noticed his injuries, which suggests that the injury was obvious. The medical practitioner who treated the guard testified that the abrasions and contusions were the type of injury for which medical attention would be sought, due to the communicable diseases within the prison. Morones has not presented any plausible

15

argument to suggest that the district judge's decision to apply an enhancement for bodily injury was erroneous.

For the reasons explained here, the district court is **affirmed** on all claims.

ENTERED FOR THE COURT


William P. Johnson
District Judge