PIERCE, Justice,
concurring in part and dissenting in part:
¶ 26. I agree with the majority that the limitation on cross-examination denied Charles Ervin a fair trial and warrants reversal. Respectfully, however, I find no problem that a flight instruction was granted in this case. Therefore, I concur in part and dissent in part.
1127. Mississippi has long recognized that “an accused’s 'flight, escape from custody, resistence to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus guilt itself.” McClendon v. State, 387 So.2d 112, 115 (Miss.1980). As noted by the majority, in deciding whether to grant a flight instruction, the trial court must take into account two considerations: (1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value. The two-pronged test must also be met in order to introduce flight evidence. Austin v. State, 784 So.2d 186, 194 (Miss.2001) (citing Fuselier v. State, 702 So.2d 388, 390 (Miss.1997)). This means that Mississippi, unlike some jurisdictions, does not distinguish between the admissibility of flight evidence and the propriety of instructing the jury on the law of flight. Cf. U.S. v. Martinez, 681 F.2d 1248, 1257 (10th Cir.1982) (“Trial courts usually focus not upon the admissibility of flight evidence but upon the propriety of including a jury instruction highlighting already admitted flight evidence.”); but see United States v. Register, 496 F.2d 1072, 1077 (5th Cir.1974), cert. denied sub nom. Cochran v. U.S., 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975) (holding that, because the jury was given a proper flight instruction, the federal district court did not err in allowing testimony from a teenage girl babysitting defendant’s child in defendant’s apartment, in which the girl told the jury that, after defendant was informed of drug raid, defendant failed to return to his apartment; the Court of Appeals found the flight evidence was admissible even though the drug raid was conducted by state officials on a different charge).
¶ 28. Here, both prongs were met.
¶ 29. The fact that Charles “ran up” to the attic when federal marshals arrived at the apartment where Charles was staying to arrest him, entered Charles’s armed-robbery trial during the State’s cross-examination of his alibi witness, Melissa Sulton, Charles’s girlfriend at the time. Sulton maintained throughout cross-examination that she did not know why the marshals were looking for Charles. Sul-ton also admitted that she knew authorities were looking for Charles prior to the marshals’ arrival because she had received a phone call from the mother of one of Charles’s other children that “the feds” were looking for Charles.
¶ 30. That no direct evidence was presented showing that Charles had any knowledge of the crime for which he was arrested, is of no matter. See, e.g., United *1062 States v. Hernandez-Miranda, 601 F.2d 1104, 1106 (9th Cir.1979) (holding that, while “other reasons might support [defendant’s] decision to take flight, ... this in itself does not make a flight instruction improper) (emphasis added). What Mississippi law requires is that there be no showing of a reasonable explanation otherwise. As we related in Austin, the common factor in cases where “ ‘explanations’ were [found] substantial enough so that a flight instruction was not proper[,] ... is that, in those circumstances, it would have been illogical for a defendant not to have run.” See Austin, 784 So.2d at 195 (noting, for example, circumstances where defendant was an escapee, or driving a stolen car, or leaving the scene of the alleged crime based on threats from another person or from potential danger from the victim). That conclusion cannot be reached here except by conjecture. Thus, the first prong was conclusively established.
¶ 31. The flight evidence also was considerably probative under the circumstances of this case. First, Charles’s alibi defense, which laid the foundation of the flight evidence, enhanced the probative value of the evidence. Sulton testified that Charles was with her the day of the alleged robbery because he had picked her up from work early that afternoon. The two were together the rest of the day, according to Sulton. Approximately three weeks later, when Sulton received a phone call from the individual mentioned above informing her that authorities were looking for Charles, Sulton did not inquire why because-reflecting back-she knew Charles was incapable of committing armed robbery. From Sulton’s testimony relating Charles’s actions prior to his arrest, coupled with the rest of her testimony, the jury reasonably could infer that Sulton was not credible and knew Charles was a suspect in the crime in question, and that Charles was not with Sulton when the robbery occurred.
¶ 32. Second, the most probative circumstance is that regarding Charles’s brother, Michael, who, according to the defense’s theory of the case, was the one who committed the robbery. On the day of the alleged robbery, Michael was taken in for questioning by Officer Adelbert Moore, the responding officer to the Healthy Body Store. Moore testified that Michael was never a suspect in the alleged robbery because Michael did not fit the description given by the victim, Martha Duffy. Again, Duffy identified Charles form a photo lineup as the person who had robbed her. And after she observed Michael sitting in the interview room through a two-way mirror, Duffy expressly excluded Michael as the suspect. During questioning, and later, at trial, Michael said Charles had stopped by Michael’s residence about thirty minutes before the police had arrived at the house. The house is located near the Healthy Body Store. Michael described the clothes Charles was wearing, which matched the descriptions given by both Duffy and Linda Stapleton. Again, Stapleton, who also lived near the Healthy Body Store, and who knows both Michael and Charles, said Charles was the person who knocked on her door, looking for “Gary.”
¶ 33. Based on this testimony, any time-lapse concern with the three-week period between the alleged robbery and Charles’s apprehension is quashed. One can infer reasonably from the circumstances surrounding Michael’s cooperation with authorities juxtaposed with Charles’s response, that Charles knew that authorities were looking for him in connection with the alleged robbery and fled and hid due to consciousness of guilt for the crime.
*1063 ¶ 34. The flight instruction given by the trial court in this case stated:
“Flight” is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Charles Ervin, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant.
¶ 35. This is a proper instruction, as approved by this Court in Ransom v. State, 149 Miss. 262, 115 So. 208, 210 (1928) (overruled on other grounds). And I find no error with the trial court’s decision to grant it in this instance.
RANDOLPH, P.J., JOINS THIS OPINION.