## Richmond

WAYSIDE RESTAURANT, INC., AND RICHARD B. WILKINSON AND OSCAR A. BORNSTEIN, T/A JAMAICA INN V. CITY OF VIRGINIA BEACH.

August 28, 1974.

Record No. 730915.

Present: I'Anson, Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Peter G. Decker, Jr. (Decker, Zoby, Collias & Christie,* on brief), for appellants.

*Grover C. Wright, Jr. (J. Dale Bimson, City Attorney for the City of Virginia Beach,* on brief), for appellee.

Harman, J., delivered the opinion of the court.

This appeal challenges the validity of Ordinance 430 [1] (the ordinance) of the City of Virginia Beach (city), which was enacted by the council of that city on February 5, 1973.

Richard B. Wilkinson and Oscar A. Bornstein, trading as Jamaica Inn (Jamaica), were notified by the police that they would be criminally charged if the dress of the dancers in their establishment did not conform to the ordinance. A declaratory judgment suit against the city challenging the validity of the ordinance was instituted by Jamaica. Subsequently Wayside Restaurant, Inc. (Wayside), was permitted, under Rule 2:15, to intervene as an interested party. The trial court held the ordinance to be facially valid. We granted an appeal and supersedeas.

The facts here, while limited, are not in dispute. Both Jamaica and Wayside are engaged in selling refreshments, food, beer and wine at their respective business establishments in Virginia Beach. Each establishment, to promote its sales, features "topless" female dancers as entertainment for its customers. The attire of the dancers consists of panty hose and a skimpy

---

[1] "AN ORDINANCE PROHIBITING CERTAIN PUBLIC NUDITY

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF VIRGINIA BEACH, VIRGINIA;

SECTION 1. *DEFINITION* As used in this Ordinance "state of nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple.

SECTION 2. *UNLAWFUL ACTS* Every person who knowingly, voluntarily and intentionally appears in public or in a public place or in a place open to the public or open to public view in a state of nudity, or employs, encourages or procures another person to so appear, shall be guilty of a misdemeanor.

SECTION 3. *EXCEPTIONS TO APPLICATION OF ORDINANCE* Nothing contained in this ordinance shall be construed to apply to the exhibition, presentation, showing or performance of any play, ballet, drama, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other similar establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, act or drama as differentiated from commercial or business advertising, promotion or exploitation of nudity for the purpose of advertising, promotion, selling or serving products or services or otherwise advancing the economic welfare of a commercial or business enterprise such as a hotel, motel, bar, nightclub, restaurant, tavern or dance hall.

SECTION 4. *EFFECTIVE DATE* This Ordinance shall be in full force and take effect one day from and after the date of its passage, a clear and present danger existing which is totally unrelated to any object of the suppression of expression or speech but which is related to the morals, health, safety and general welfare of the public."

"bottom." The dancers are unclad above the waist. The dancers employed by Jamaica appear and dance to recorded music on a "runway" at lunchtime five days a week and during the evening hours six nights a week. The parties agree that the dancers' dress, or lack of it, fails to comply with the requirements of the ordinance.

Here, as in the trial court, Jamaica and Wayside attack the ordinance on three grounds. They first assert that it is invalid because it is inconsistent with specific state laws. Secondly, they claim that the ordinance is overbroad and violates the First Amendment guarantees of free speech and assembly. Finally, they argue that the ordinance violates the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the latter amendment.

■ Code § 1-13.17 provides that ordinances adopted by the council of a city must not be inconsistent with the constitution and laws of the United States or of the Commonwealth.

The appellants assert here, as they did below, that the ordinance violates that proscription against inconsistency. To support this position they point to Code § 18.1-236 which makes it a misdemeanor to intentionally and obscenely display or expose one's person, or the private parts thereof, in a public place, or in any place where others are present, or to procure another to do so. They also say the ordinance is inconsistent with Code § 18.1-230 which punishes one who procures, promotes, prepares, presents, manages, directs, carries on or participates in any obscene exhibition or performance. They assert before us, for the first time, that the ordinance is also inconsistent with § 55 of the Regulations of the Virginia Alcoholic Beverage Control Board which defines lewd and disorderly conduct.

We find no merit in this attack upon the ordinance for inconsistency. While the General Assembly has seen fit, by Code §§ 18.1-230 and 236, to enact proscriptions against obscene performances and the obscene display of one's person, or the private parts thereof, as matters of state-wide concern, we are of the opinion that these state laws do not prevent a local governing body, under its police power, from enacting ordinances, not inconsistent with the state law, prohibiting conduct which the local governing body reasonably deems to be contrary to the morals, health, safety and general welfare of the community.[2]

---

[2] The power to enact such ordinances is specifically granted to the city in its charter. Acts, 1952, ch. 33.

For, as we said in *King* v. *Arlington County,* 195 Va. 1084, 1090, 81 S.E.2d 587, 591 (1954):

". . . The mere fact that the state, in the exercise of the police power, has made certain regulations, does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail . . . ."

We likewise find no inconsistency between the ordinance and § 55 of the Regulations of the Virginia Alcoholic Beverage Control Board. This regulation, which has the force and effect of law under Code §§ 4-98.14 and 4-103(b), while defining certain specific acts as lewd and disorderly conduct, by its own terms does not purport to be all-inclusive. This is demonstrated by that part of the first sentence of the regulation which states: "While not limited thereto, the Board shall consider the following conduct upon any licensed premises to constitute lewd or disorderly conduct . . . ."

Before addressing the constitutional arguments advanced by the appellants, we think it well to focus upon the crucial fact that the appellants are admittedly engaged in the licensed sale of beer and wine as a commercial enterprise. The appellants advance a number of arguments that the ordinance is overbroad, *i.e.,* that it would proscribe the wearing of many types of socially acceptable wearing apparel and beach wear, and that dancing, as a form of expression, is speech protected by the First

Amendment. The rule is that where, as here, a line can be clearly drawn between commercial and non-commercial conduct and it clearly appears that the prohibited activity is in the commercial area, the actor does not have standing to rely upon the hypothetical rights of those in the non-commercial zone in mounting an attack upon the constitutionality of a legislative enactment. *Breard* v. *Alexandria,* 341 U.S. 622 (1951). Since the appellants have no standing to assert the rights of those engaged in non-commercial activity, we limit our consideration of the ordinance to its effect upon the commercial activity in which the appellants are engaged, namely, the licensed sale of beer and wine.

Recently in *California* v. *LaRue,* 409 U.S. 109 (1972), the United States Supreme Court had occasion to consider a challenge· on First Amendment grounds to the facial constitutionality of certain California Department of Alcoholic Beverage Control regulations dealing with conduct by employees and entertainers in establishments licensed to sell alcoholic beverages. The majority, speaking through Mr. Justice Rehnquist, pointed out at p. 114, "While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring more than the normal state authority over public health, welfare and morals . . . ."

Later, after noting that it did not disagree with the determination of the three judge District Court that the regulations would proscribe some forms of visual presentation which would not be obscene under *Roth* v. *United States,* 354 U.S. 476 (1957), and its progeny, the majority, at p. 116, said, ". . . we do not believe the state regulatory authority in this case was limited to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with other forms of communicative conduct in *O'Brien.*" [*United States* v. *O'Brien,* 391 U.S. 367 (1968)].

Noting that its holding did not place all conduct and performances in licensed establishments outside the protection of the First and Fourteenth Amendments, the court refused to strike down the regulations in question as facially uncon-stitutional and appears to have reserved decision on con-

crete questions of constitutional dimension which might arise from future application of the regulations to specific incidents.

Upon the record before us here we are confronted with a problem similar to that posed to the Supreme Court in *LaRue*. The appellants, who had the burden of proof at trial, limited their evidence supporting the First Amendment claim to the facts recited earlier and to the bold assertion that dancing, as a form of expression, was protected by the First Amendment. No dancer employed by either of the appellants is a party to or testified in this proceeding. No evidence was presented which establishes that we are dealing with more than mere conduct, which is a fit subject of regulation under the police power, as opposed to a mixture of conduct and speech, which might necessitate balancing and resolving the apparent conflict between First Amendment rights on the one hand and the police power, as extended by the Twenty-first Amendment, on the other.

Facially the ordinance appears to apply only to conduct, and the trial court so found. This is the position which the city has maintained throughout this litigation.

The ordinance comes to us with the presumption of constitutionality which attaches to all legislative enactments. This rule requires us, in case of doubt, to resolve that doubt in favor of constitutionality of the enactment. *Town of Ashland* v. *Supervisors*, 202 Va. 409, 416, 117 S.E.2d 679, 684 (1961).

In this posture we cannot say that the trial court erred in rejecting appellants' First Amendment attack upon the facial constitutionality of the ordinance. As suggested by *LaRue*, we reserve decision to another day, upon a full and adequate record, on any concrete problems of constitutional dimension under the First Amendment which might arise from future application of the ordinance.

Appellants' Due Process argument, based on the alleged vagueness of the ordinance, focuses upon the word "buttocks" that appears in Section 1 of the ordinance and the words "other similar establishments" which appear in Section 3. We find no merit in this argument since those words are words in common use, they are well defined and are readily understood by the average person.

The appellants' final argument is that the ordinance discriminates against them by excepting certain exhibitions and

performances from its effect in Section 3, and thereby violates the Equal Protection Clause of the Fourteenth Amendment.

The exceptions in Section 3 of the ordinance are designed to exempt from its operation those establishments presenting exhibits or performances "which are primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama as differentiated from commercial or business advertising, promotion or exploitation of nudity."

Classification violates the Equal Protection Clause unless the classification is rational and regulation of one class to the exclusion of other classes promotes a legitimate state interest. Here, one class embraces commercial establishments which employ nudity as a sales promotion device. The other class embraces. establishments, commercial and otherwise, which employ nudity "as a form of expression of opinion." The members of the latter class may enjoy First Amendment protection; the members of the former class do not. Hence, the classification is rational. And since a display of nudity in public places for purely commercial purposes may offend the mores of the community, the regulation of the class that employs nudity for such purposes, to the exclusion of classes that do not, promotes a legitimate state interest.

When nudity is employed as a sales promotion device in bars and restaurants, nudity is conduct. As conduct, nudity is as fit a subject for governmental regulation as the licensing of liquor dispensaries and fixing their closing hours. *City of Portland* v. *Derrington*, 253 Ore. 289, 292-93, 451 P.2d 111, 113, *cert. denied*, 396 U.S. 901 (1969).

Where, as here, the reasons for the classification in the ordinance are natural and substantial in light of the subject matter and the evil sought to be eliminated, the classification will withstand attack as being discriminatory under the Equal Protection Clause of the Fourteenth Amendment. *Kisley* v. *City of Falls Church*, 212 Va. 693, 187 S.E.2d 168, *appeal dismissed*, 409 U.S. 907 (1972).

*Affirmed.*