Louis Anthony BOMHOWER,
individually and t/a Apollo
Productions, Plaintiff,

v.

CITY OF VIRGINIA BEACH,
Defendant.

No. Civ.A. 2:99CV1276.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 30, 1999.

**682**

John D. Hooker, Jr., Law Offices of John D. Hooker, Jr., & Associates, Virginia Beach, VA, for Plaintiff.

Kimberly Rouse Van Essendelft, Roderick R. Ingram, Mark D. Stiles, Asst. City Atty's Office, Virginia Beach, VA, for Defendant.

### OPINION AND FINAL ORDER

PRINCE, United States Magistrate Judge.

Plaintiff, Louis Anthony Bomhower, individually and t/a Apollo Productions ("Plaintiff"), filed a Bill of Complaint in the Circuit Court of the City of Virginia Beach against the defendant, City of Virginia Beach ("the City"), praying for a declara-

tory judgment that § 23–30.1 of the Virginia Beach City Code, adopted on June 1, 1999, and effective on July 1, 1999, is unconstitutional and unenforceable. The Bill of Complaint was filed on August 5, 1999. The City then filed a Notice of Removal with this Court on August 11, 1999. The parties thereafter consented to have a magistrate judge dispose of the case pursuant to 28 U.S.C. § 636(c), and the Court has jurisdiction to hear the matter under 28 U.S.C. § 1331.

A Motion to Dismiss, with supporting memorandum, was filed by the City on August 26, 1999. Although no reply brief was filed by Plaintiff, during oral arguments on the Motion to Dismiss, Plaintiff's counsel explained that Plaintiff's Memorandum in Support of Motion for Temporary Injunction, filed on or about September 2, 1999, should be read as its response to the Motion to Dismiss. The Court held a hearing and heard argument on the City's Motion to Dismiss and Plaintiff's Motion for Temporary Injunction [1] on September 29, 1999.

In light of the fact that evidence outside of the Bill of Complaint was presented by the City in support of its Motion to Dismiss,[2] and pursuant to Fed.R.Civ.P. 12(b), the Court, by Order dated October 14, 1999, decided to treat the City's Motion to Dismiss as one for Summary Judgment.[3] Pursuant to the same Order, Plaintiff was given twenty-one (21) days from the date of the Order to present evidence made pertinent by the City's Motion for Summary Judgment under Fed.R.Civ.P. 56. Subsequently, in a single paragraph letter dated October 30, 1999, Plaintiff stated his intention not to present any additional evidence.

---

1. By Order dated September 30, 1999, the Court denied Plaintiff's Motion for Temporary Injunction.

2. In particular, the City provided the Court with a comment version of the Ordinance, which sets forth the facts relied on by the City Council in approving the Ordinance.

3. Pursuant to the Court's Order of October 14, 1999, the City's Motion to Dismiss hereinafter will be referred to as a Motion for Summary Judgment.

Accordingly, having reserved judgment at the conclusion of the hearing and having received Plaintiff's reply to the Court's Order of October 14, 1999, the Court now Orders that the Motion for Summary Judgment be GRANTED and Plaintiff's Bill of Complaint be DISMISSED WITH PREJUDICE.

## I. SUMMARY OF FACTS

On June 1, 1999, the Virginia Beach City Council ("City Council") adopted Ordinance 99–2538 ("the Ordinance"), which added § 23–30.1 to the City Code. The Ordinance was made effective on July 1, 1999.

The Ordinance essentially requires: (1) that any viewing area of a business establishment that provides live exhibitions or performances be unobstructed by curtains, doors, walls, display racks or any other enclosure or barrier, Virginia Beach City Code § 23–30.1(c)(1); (2) that at least one employee other than the performer must be on duty whenever any patron is inside the establishment, and must have a direct line of sight of any viewing area during any live exhibition or performance, *id.* at § 23–30.1(c)(2); (3) that any manager's station inside the establishment have an unobstructed view of the performance area, *id.* at § 23–30.1(c)(3); (4) that no sofa, futon, cot, bed, mattress or similar furnishing shall be located in any area of the establishment to which the public is permitted access, *id.* at § 23–30.1(c)(6); and (5) that performers and patrons cannot touch particular parts of each other's bodies, *id.* at § 23–30.1(c)(4)–(5) and (d)–(e). The Ordinance also prohibits performers from appearing in a "state of nudity," *id.* at § 23–30.1(c)(7), which essentially restates the City's preexisting ban on public nudity previously held constitutional. *See id.* at § 22–10; *Wayside Restaurant v. Virginia Beach,* 215 Va. 231, 208 S.E.2d 51 (1974).

The Ordinance also specifically excludes from its coverage the following:

any play, ballet, drama, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama. *Id.* at § 23–30.1(f).

The City Council adopted the Ordinance essentially to protect the public from criminal activity and unhealthy conditions. *Id.* at § 23–30.1(b). Evidence provided to the City Council in support of its adoption included: (1) evidence from the Virginia Beach Police Department; (2) studies conducted in various other cities; and (3) findings reported in the Final Report of the Attorney General's Commission on Pornography. (Docket # 5, Ex. 3.)

Plaintiff has been in operation in the City of Virginia Beach since 1984. Compl. ¶ 2. Apollo Productions ("Apollo"), located in a commercial/industrial district, consists of a retail store which provides a large inventory of ladies shoes, clothing and lingerie. Compl. ¶ 3, 7. Apollo also provides its customers with lingerie models and closed-booths within which to view the lingerie models. Compl. ¶ 3, 5. When modeling clothing or lingerie, there is no nudity permitted and models must wear garments under any lingerie that is transparent or semi-transparent to prevent any nudity. Compl. ¶ 4. Apollo also operates "in-call" studios within which nude dancers are provided to its customers. Compl. ¶ 6. Plaintiff refers to his modeling and "in-call" studios as "completely private," however, these studios are only "private" in that they are smaller, enclosed areas of a larger, for-profit business establishment. These "private" studios, or, more appropriately, "closed-booths," are accessible to the general public as a part of Plaintiff's commercial enterprise, within which Apollo's employees service their patrons.

Plaintiff states that the Ordinance will prohibit him from continuing his business.

Compl. ¶ 11. Plaintiff then argues the Ordinance is unconstitutional because it is (1) a violation of the First Amendment's right to free expression, (2) vague, (3) overbroad and (4) discriminatory under the Equal Protection Clause. For the reasons set forth below, the Court finds no merit in Plaintiff's claims that the Ordinance is unconstitutional.

## II. CONCLUSIONS OF LAW

### STANDARD OF REVIEW

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505; *Matsushita Elec. Indust. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, a party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### FIRST AMENDMENT VIOLATION

The nature and degree to which dancing communicates a message has been frequently debated, and, in particular, the message expressed by nude dancing has been said to lie only marginally within the outer perimeters of the First Amendment.

*See D.G. Restaurant v. City of Myrtle Beach,* 953 F.2d 140, 144 (4th Cir.1991). In the case at bar, the record sheds little light on whether the services provided within Plaintiff's closed-booths contain an expressive element at all, as opposed to pure conduct to which the First Amendment affords no protection. *See id.* at 144–45 (nude dancing can convey an erotic stimulus, but, as such, that "message" would appear to be more analogous to a physical stimulus than to the communication of ideas through speech). In fact, Plaintiff has not articulated to the Court's satisfaction the actual message that his nude dancers express within the closed-booths. Nevertheless, for the purposes of this Opinion, the Court will assume, without so finding, that the nude dancing provided to Apollo customers within the closed-booths express at least an erotic message. Consequently, the Court will proceed to consider the constitutionality of the Ordinance.

█ Having reviewed the Ordinance at issue, it appears to the Court to be an incidental restriction on the manner, rather than the content, of expression. In fact, the Ordinance itself states that it was not intended "to suppress any activities protected by the First Amendment," rather, it was meant to be "content-neutral." Virginia Beach City Code § 23–30.1(b). Such a restriction on the manner of expression is constitutionally valid if:

(1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on ... First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Wall Distributors v. City of Newport News,* 782 F.2d 1165, 1169 (4th Cir.1986) (*citing United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672). In *Wall Distributors,* the Court of Appeals for the Fourth Circuit validated a closed-

booth restriction similar to the one at bar after applying the above-quoted *O'Brien* test.

■ As to the first element of the *O'Brien* test, the Court finds that the Ordinance lies within the general constitutional power of the City. The regulation is designed to promote the public welfare by both preventing crime and maintaining sanitary conditions within and around closed-booth operations, and, therefore, falls within the broad general limits of the City's police power. *See id.* at 1169 (*citing Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1246 (9th Cir.1982); *Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821, 828 & n. 8 (4th Cir.1979)).

To meet the second element, the requirement that the regulation further an important or substantial government interest, the City advances its interests in reducing crime and maintaining public health. The City further contends that the Ordinance is based on a reasonable legislative determination that its enforcement will further the asserted government interests.

To have the City's legislative determination sustained against constitutional attack, a legislature is not bound to create an evidentiary record that would pass muster on plenary judicial review of legislation's necessity and fitness to achieve desired results. *See id.* Judicial review goes only to whether the legislative determination of justification and fitness is not facially without factual support, hence not arbitrary and capricious. *See id.* (*citngHart,* 612 F.2d at 828; *Ellwest,* 681 F.2d at 1246–47).

In adopting the Ordinance, the City Council relied on (1) evidence from the Virginia Beach Police Department, (2) studies conducted in other similarly situated cities,[4] and (3) findings reported in the Final Report of the Attorney General's Commission on Pornography. According-

ly, the Court finds the City Council did indeed have a reasonable basis for determining that closed-booth performances, such as those at Apollo, would sufficiently foster a pattern of conduct inimical to public health and order, and that such conduct could be foreclosed through enforcement of the Ordinance. *See id.*

The third element of the *O'Brien* test requires that the government interest not be related to suppression of free expression. Under this element, the Court must "eschew altogether the 'guesswork' of speculating about the motive of lawmakers." *Id.* at 1170 (*citing Hart,* 612 F.2d at 829). Instead, the Court must look only to the face of the regulation and the identifiable interest advanced to justify the regulation. *Id.*

On its face, the intent of the Ordinance is "not to suppress any activities protected by the First Amendment, but is to enact content-neutral regulations ..." Virginia Beach City Code § 23–30.1(b). The Ordinance states it was designed to "prevent the deleterious secondary effects associated with live exhibitions or performances" in business establishments which provide certain exhibitions or performances in closed-booths. Accordingly, the Court holds that the government's interest in the Ordinance is not related to suppression of free expression.

The final factor of the *O'Brien* test requires the incidental restriction on First Amendment interests be no greater than essential to achieve the interest advanced by the government. In this case, the means chosen by the City in its efforts to eliminate the undesired secondary effects of closed-booth performances, such as those performed at Apollo, appear to be among the least burdensome. For instance, the Ordinance merely restricts the manner of their operation, and in no way

---

**4.** The Court notes that a proper factor in a legislative determination of governmental interests is what was demonstrably being generally experienced in comparable localities.

*See Wall Distributors,* 782 F.2d at 1169 n. 7 (*citing Ellwest,* 681 F.2d 1243; *Hart,* 612 F.2d 821).

limits the hours of operation or the number of booths. The exemptions included within the Ordinance also serve to satisfy the Court that the Ordinance is properly tailored to pass constitutional muster. Accordingly, the Court concludes that the Ordinance is narrowly tailored to serve the specific interests advanced by the City.

Pursuant to the above, the Court finds the Ordinance to be a valid manner restriction under Supreme Court and Fourth Circuit precedent.

## VAGUENESS

Next the Court considers Plaintiff's contention that the Ordinance is void for vagueness. The Court rejects this claim at the outset because it is apparent under *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), that Plaintiff lacks standing to raise it. *See generally Hart*, 612 F.2d at 833.

In *Mini Theatres*, a majority of the Supreme Court[5] held that, because the ordinance at issue clearly applied to the respondent adult theaters, they did not have standing to challenge the ordinance for vagueness. *See Hart*, 612 F.2d at 833 (*explaining Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)). The majority found that the usual concerns that permit litigants unaffected by the vagueness of a law touching expression to raise the claims on behalf of others possibly affected are not present when sexually-explicit materials are at issue:

> Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social or political significance, and since the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction, we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court.

*Id.* (*citing Mini Theatres*, 427 U.S. at 61, 96 S.Ct. 2440).

■ In the case at bar, the Ordinance clearly applies to Plaintiff. In fact, Plaintiff alleges in his Complaint that the Ordinance will "prohibit Apollo from continuing with its business." Compl. ¶ 11. This allegation was repeated by Plaintiff's counsel during oral arguments before the Court. Accordingly, pursuant to Supreme Court precedent and Plaintiff's own allegations, the Court finds that Plaintiff lacks standing to challenge the Ordinance for vagueness.

■ Furthermore, the Court finds that if Plaintiff was granted standing to raise this issue, the Ordinance would withstand a vagueness challenge. Plaintiff essentially alleges vagueness as to three phrases:

(1) modeling, dancing or any similar activity which involves a person or persons physically performing for the benefit of one or more other persons,

(2) sofa, futon, cot, bed, mattress, or similar furnishing, and

(3) any theater, concert hall, museum of fine arts, school, institution of higher learning or other establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama.

*See* Memorandum in Support of Motion for Temporary Injunction, at 10–11. The Court finds these statutory phrases reasonably specific and precise, bearing in mind that unavoidable imprecision is not fatal and celestial precision is not necessary. *See Hart*, 612 F.2d at 833 (*citing Miller v. California*, 413 U.S. 15, 27–28 n. 10, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).

---

5. Justice Powell joined this portion of the opinion.

## OVERBREADTH

█ The Supreme Court has repeatedly expressed reluctance to strike down a statute on its face for overbreadth where there were a substantial number of situations to which the statute might validly be applied. *See Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct. *See id.* (*citing U.S. Civil Service Comm'n v. National Association of Letter Carriers, AFL—CIO*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)). The Supreme Court also has recognized that where conduct and not merely speech is involved, overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

█ In the case at bar, Plaintiff first claims that the definition of "live exhibitions and performances,"[6] to which the Ordinance is directed, is too broadly defined, thereby chilling totally innocent activities. However, the Court notes the statutory exemptions from the definition of "live exhibition or performance," which narrow the breadth of the phrase and which the Court will quote in full below:

> Nothing contained in this section shall be construed to apply to the exhibition, presentation, showing or performance of any play, ballet, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama.

Virginia Beach City Code § 23–30.1(f).

Plaintiff's second claim is that the Ordinance's ban on public nudity sweeps more broadly than is permitted. On this point, the Court simply notes that the restriction on public nudity within the Ordinance is a mere restatement of pre-existing law in the City, which has already withstood an earlier constitutional attack. *See* Virginia Beach City Code § 22–10; *Wayside Restaurant*, 215 Va. 231, 208 S.E.2d 51 (1974). Since the City's pre-exiting law banning public nudity has been found constitutionally valid and is not now attacked by Plaintiff, the Court will not invalidate the same restriction in the Ordinance at issue.

Accordingly, since the Plaintiff has failed to show a substantial amount of infringement on protected speech, the Court finds that the Ordinance is not overbroad.

## EQUAL PROTECTION VIOLATION

█ Plaintiff claims that the Ordinance is discriminatory against his adult establishment because it allows nude dancing at other locations by:

> disguising such exceptions as ballets, dramas, tableaus, schools, institutions of higher learning or '*other establishments*' which is primarily devoted to exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama.

Compl. ¶ 17 (emphasis in original). The Court rejects Plaintiff's claim and finds no equal protection violation.

The Court's finding that the Ordinance does not violate equal protection essentially rests on the same rationale which led the Court to earlier conclude that no First Amendment violation was shown. *See Hart*, 612 F.2d at 831. Since the Ordinance has only an incidental effect on ex-

---

**6.** "Live exhibition or performance means modeling, dancing or any similar activity which involves a person or persons physically performing for the benefit of one or more other persons." Virginia Beach City Code § 23–30.1(a).

pression, First Amendment interests are not directly threatened by the alleged unequal treatment of Plaintiff's adult establishment and the exempted non-adult establishments. *See id.* Consequently, the classification is justified since it is rationally related to an important government interest.[7]

### III. CONCLUSION

For the reasons stated above, the Court hereby ORDERS that the Motion for Summary Judgment be GRANTED, and the Bill of Complaint be DISMISSED WITH PREJUDICE.

The Clerk shall mail a copy of this Opinion and Final Order to counsel for the parties.

---

**7.** The unequal treatment of the commercial establishments, as alleged by Plaintiff, is rationally based on the different effects the establishments are reasonably believed to have on their surroundings. *See Hart,* 612 F.2d at 830–31 (*citing Mini Theatres,* 427 U.S. at 82 n. 6, 96 S.Ct. 2440). Further discussion of the Ordinance and its rational relationship to important government interests can be found above in the Court's application of the *O'Brien* test.