FITZPATRICK, C.J.,
with whom BENTON and ELDER, JJ., join, dissenting.
I respectfully dissent from the majority opinion. Appellants contend that the ordinance is unconstitutional both on its face and as applied in these cases because it violates their First Amendment rights to free speech and association, violates the enabling statute and that the evidence was insufficient to support the convictions. Because I would decide this case on the basis of the content-based selective enforcement, I address that issue only and would not reach the other assignments of error addressed by the majority.[16]
“Two conflicting rights are involved in [these] appeal[s]: (1) the right to free, individual self-expression, and (2) a government’s right to enact legislation for the safety and welfare of its citizens.” Adams Outdoor Adv. v. City of Newport News, 236 Va. 370, 381, 373 S.E.2d 917, 922 (1988).
The First Amendment of the Constitution provides: “Congress shall make no law abridging the freedom of speech.” This freedom is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action; and municipal ordinances adopted under state authority constitute state action.
Staub v. City of Baxley, 355 U.S. 313, 321, 78 S.Ct. 277, 281, 2 L.Ed.2d 302 (1958). “[T]he First Amendment needs breath *527 ing space[;] ... statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.” Broadrick v. Oklahoma, 413 U.S. 601, 611-12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). “In assessing the constitutionality of a statute, we must presume that the legislative action is valid. The burden is on the challenger to prove the alleged constitutional defect.” Woolfolk v. Commonwealth, 18 Va.App. 840, 848, 447 S.E.2d 530, 534 (1994).

Vagueness and Lack of Fair Notice

As applied to them, appellants contend the ordinance violates the First Amendment because it is unconstitutionally vague, and it impermissibly regulates content. I agree.
“Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.” Chicago v. Morales, 527 U.S. 41, 56, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999). While the County can regulate the conduct involved here, it “must clearly define the proscribed conduct and must ... enforce[ ] [the ordinance] equally, and not arbitrarily or capriciously, when it is applicable.” Colonial First Properties v. Henrico County Virginia, 166 F.Supp.2d 1070, 1090 (E.D.Va.2001).
“It is a basic principle of due process that an enactment is [unconstitutional] if its prohibitions are not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). “[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.” Id.
The record proves that the County failed to give Gold City “a reasonable opportunity to know what is prohibited” under *528 the ordinance. The Commonwealth’s Attorney conceded that he would not prosecute people wearing “contemporary swimwear” or “short-shorts,” although these items fall within the prohibitions of the ordinance. Moreover, the Commonwealth’s Attorney agreed that a mother breast feeding her baby in public would be a violation of the ordinance.[17] Therefore, prior to this prosecution, there was no way for appellants to determine what clothing would put them in violation of the ordinance. Indeed, although the County was aware of Gold City’s proposed format, the County never gave appellants any advance warning that their conduct would constitute a violation of the ordinance.[18]
The evidence adduced at the federal court hearing showed the events leading up to the opening of Gold City and the issuing of summons on July 6 and July 8 to be as follows:
(1) a week before Gold City opened for business, Gold City informed some of the County’s highest-ranking officials of the mode of dancing (“pasties and Gstring” [sic]) to be performed; (2) at the same time Gold City explained to those officials the view that Gold City was covered by an exception to the Ordinance; (3) the Acting Chief of Police represented that he was uncertain about the matter, but would look into it; (4) he [did] so; (5) the same afternoon, the County Attorney and the Commonwealth’s Attorney and the Acting Chief of Police had concluded that Gold City: (a) was wrong in its interpretation of the Ordinance; (b) the mode of dancing Gold City would use was in violation of the Ordinance; and (6) the County never informed Gold City of these views.
*529 Colonial First Properties, 166 F.Supp.2d at 1082. “Remarkably, and for reasons neither expressed nor readily apparent, Gold City was not notified that the County’s executives and law enforcement officials had determined that Gold City’s proposed operational format violated the Ordinance.” Id. at 1074.
Furthermore, the record indicates that neither the Commonwealth’s Attorney nor the police were able to clearly delineate what would constitute a violation of the ordinance or at least what they would prosecute as a violation. During cross-examination, one officer stated that he would have to see a particular item of clothing before he could state whether it would be in violation of the ordinance and that the determination would be made on “a case-by-case basis.” Another officer testified that liability under the ordinance would depend on “what type of G-string [a person] was wearing.” Thus, the application of the ordinance did not clearly define the proscribed conduct and vested an unacceptable level of discretion in the hands of those charged with enforcing it. Appellants did not have “a reasonable opportunity to know what [conduct was] prohibited” prior to the police issuing summonses on July 6, 2001. Grayned, 408 U.S. at 108, 92 S.Ct. at 2298.

Arbitrary Enforcement

The facts adduced at trial clearly prove that the ordinance violates “the requirement that a legislature establish minimal guidelines to govern law enforcement.” Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The Commonwealth’s Attorney conceded that he would not prosecute “technical” violations of the ordinance. He did not, however, state how he would distinguish between a “technical” violation and those before the trial court. Instead, he conceded that the prosecutions at issue here were driven by his opinion of the content of the performances at Gold City. Essentially, the County prosecutors and law enforcement personnel exercised their own discretion “on an ad hoc and subjective basis.” Grayned, 408 U.S. at 109, 92 S.Ct. at 2299. As appellants noted in the trial court, “the [ordinance] says *530 one thing. [The Commonwealth is] going to prosecute something else.”
Lastly, one of the officers stated that while they were issuing summonses, other Gold City dancers who were in violation of the ordinance continued to perform, but were not cited. Rather than continuing to issue summonses, the officer “just brought it to Ms. White’s attention that the way they were dressed they were still in violation and that she had to bring them into compliance.” Hence, I conclude there was selective enforcement of the ordinance both as to Gold City generally and with respect to particular dancers in Gold City. “A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” Grayned, 408 U.S at 108-09, 92 S.Ct. at 2299.

Content-based Regulation

“To safeguard free speech, the Supreme Court requires that a regulatory measure be content neutral. The doctrine of content neutrality provides that governmental regulations may not ‘restrict expression because of its message, its ideas, its subject matter, or its content.’ ” Adams Outdoor Adv., 286 Va. at 381, 373 S.E.2d at 922 (citing Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972)).
The Commonwealth’s Attorney’s subjective opinion demonstrated that the prosecutions in these cases were based “primarily” upon his opinion of the content of the performances. This focus on the content of appellants’ conduct at Gold City renders the County’s application of the ordinance in these cases unconstitutional.
“[N]ude [or semi-nude] dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so.” Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). According *531 ly, “government restrictions on public nudity such as the ordinance at issue here should be evaluated under the framework set forth in [United States v.] O’Brien[, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968),] for content-neutral restrictions on symbolic speech.” Erie v. Pap’s A.M., 529 U.S. 277, 289, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000). That test provides that
a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
O’Brien, 391 U.S. at 377, 88 S.Ct. at 1679. Appellants conceded at trial that the County “surely” has the authority to enact the ordinance. Thus, the first prong in O’Brien is met. Appellants argue, however, that the ordinance does not further a substantial government interest; it is impermissibly related to the suppression of protected expressive conduct, namely erotic dancing; and that it is not sufficiently narrowly tailored to satisfy O’Brien.
The second part of the O’Brien test requires that the ordinance further a substantial government interest. I agree with the majority’s conclusion that the ordinance “furthers a substantial government interest in protecting order and morality.” Id. Therefore, the ordinance satisfies O’Brien’s second requirement.
Under the third prong of O’Brien “the governmental interest must be unrelated to the suppression of free expression.” Barnes, 501 U.S. at 570, 111 S.Ct. at 2463. Although the purpose for which the ordinance was adopted satisfies this requirement, the application of the ordinance in these cases is problematic. Henrico County adopted the ordinance in 1982 to combat the problems of public urination, exposure of the *532 buttocks (i.e., “mooning”) and skinny dipping.[19] The ordinance provides:
(a) As used in this section, the term “state of nudity” means a state of undress so as to expose the human male or female genitals, pubic area or buttocks or to cover any of them with less than a fully opaque covering, or the showing of the female breast or any portion thereof below the top of the nipple, or covering of the breast or any portion thereof below the top of the nipple with less than a fully opaque covering.
(b) Every person who knowingly, voluntarily and intentionally appears in public or in a public place or in a place open to the public or open to public view in a state of nudity, or employs, encourages or procures another person so to appear, shall be guilty of a misdemeanor punishable by confinement in jail for not more than six months or a fine of not more than $500.00, or both.
(c) Nothing contained in this section shall be construed to apply to the exhibition, presentation, showing or performance of any play, ballet, drama, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other similar establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama.
*533 Henrico County Code § 13-107. In contrast, the ordinances at issue in Barnes and Pap’s AM. were flat bans on all public nudity and specifically required dancers to wear G-strings and pasties. Barnes, 501 U.S. at 563, 111 S.Ct. at 2458-59; Pap’s A.M., 529 U.S. at 284, 120 S.Ct. at 1388.
The ordinance here, like the statute in Barnes, is on its face a general prohibition on public nudity. By its terms, the ordinance regulates conduct alone. It does not target nudity that contains an erotic message; rather, it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity.
Pap’s A.M., 529 U.S. at 290, 120 S.Ct. at 1391. Furthermore, the ordinance in Pap’s AM. specifically included theaters and dance halls. Thus, they satisfied the third prong of the O’Brien test, because they were directed solely at conduct without reference to expression.[20]
In the instant cases, subsection (c) of the ordinance creates certain exemptions for nude performances, including those performed in theaters. The Commonwealth’s Attorney stated that he did not believe Gold City fell within subsection (c) based on his opinion of the content of the performances at Gold City. This express reference to content brings the County’s enforcement of the ordinance into the realm of First Amendment protections because those enforcing the ordinance must make content-based distinctions. See, e.g., Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 2545, 105 L.Ed.2d 342 (1989) (“If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit *534 the expression of an idea simply because society finds the idea itself offensive or disagreeable.”); IOTA XI v. George Mason University, 993 F.2d 386 (4th Cir.1993) (an exception for theatrical productions cannot be limited “to protect only a narrow and limited category of professionally produced plays” rather, even “crude and amateurish and perhaps unappealing” performances “come within the First Amendment’s reach”); see also Barnes, 501 U.S. at 594, 111 S.Ct. at 2475 (“While the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person who wants some ‘entertainment’ with his beer or shot of rye.”) (White, J. dissenting).
As applied by the County in the instant cases, the ordinance delineates a type of expressive conduct permitted under limited circumstances and bans other types of expressive conduct that fall within the First Amendment’s protection, albeit on the “outer limits” of such protection. The County argues that the exemption in subsection (c) is a “time, place and manner” regulation. Although this argument has appeal, given the express limitations on venue, the County’s enforcement in these cases does not satisfy the “alternative avenues of communication” requirement for time, place and manner regulations. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986).[21] The County’s application of the ordinance does not provide for an alternative venue within the County to convey the “erotic message,” as required by the United States Supreme Court.
The fourth prong of O'Brien requires “the incidental restriction on alleged First Amendment freedoms [be] no greater than is essential to the furtherance of that interest.” O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679. This prong highlights another important distinction between the instant cases and *535 Barnes and Pap’s A.M. In the latter, exotic dancing in pasties and G-strings was permitted; however, the dancers sought instead to dance completely nude. In upholding the ordinances in both cases, the Court held that “any incidental impact on the expressive element of nude dancing is de minimis. The requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer’s erotic message.” Pap’s A.M., 529 U.S. at 301, 120 S.Ct. at 1397; see also Barnes, 501 U.S. at 572, 111 S.Ct. at 2463 (“requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State’s purpose”).
In the instant cases, the legislative intent underlying the ordinance was to prevent urinating in public and similar problems. The County conceded that exotic dancing was not the activity it sought to regulate when the ordinance was adopted. Viewed in the context of its legislative history, the ordinance as applied is not narrowly drawn so that the incidental restriction on the expressive conduct at issue is no greater than is essential to prevent or deter public urination, “mooning” or skinny dipping.
In summary, I agree with the U.S. District Court’s reasoning that
[T]he Supreme Court of the United States views nude dancing [as] expressive conduct that is entitled to some quantum of protection under the First Amendment. Hence, though the subject matter here is, as the Plaintiffs admit, mundane, it involves a well-settled right under the First Amendment. The exercise of that right may be circumscribed by local law, but the law, as applied, must allow the conduct permitted by the First Amendment. The law, of course, must clearly define the proscribed conduct and must be enforced equally, and not arbitrarily or capriciously, when it is applicable.
When measured against these precepts, the Ordinance is troublesome. On its face, as admitted by the Common *536 wealth’s Attorney, the Ordinance would make it unlawful for a mother to nurse her child in public, conduct that often occurs in today’s society and that is widely accepted. It, by admission of the Commonwealth’s Attorney, would prohibit the wearing of bathing suits commonly sold in the County and worn at its public pools and at private clubs, though the Ordinance would not necessarily be enforced against each technical violation. Though admitting that both were technically violative of the Ordinance, the Commonwealth’s Attorney would permit Jennifer Lopez to wear one famously revealing dress, but prohibit her from wearing another as to which it is difficult to discern a difference. Some of these violations would be prosecuted; others would not.
The Ordinance contains a provision, section (c), that permits the very conduct engaged in by and at Gold City to be performed in a different, but nonetheless public, venue. Mr. Kizer testified that, while a ballet at a dance hall, featuring completely nude dancers for the duration of the performance, would not be prohibited by the Ordinance, dancing in pasties and G-strings on the stage at Gold City does not fall under the exception. Section (c) has serious exposure to constitutional challenge as to its application, especially in perspective of Mr. Kizer’s testimony that the content of constitutionally protected expressive conduct plays a role in assessing whether that conduct violates the Ordinance.
Colonial First Properties, 166 F.Supp.2d at 1090.
I would reverse the judgment of the trial court and dismiss the convictions.

. Appellants assert several additional constitutional arguments, including that the ordinance constitutes a regulatory taking. However, these arguments were not raised in the trial court and thus are waived. Rule 5A:18.

. The County correctly notes that breast feeding is statutorily exempted from the indecent exposure statute, so no prosecution could follow under state Code § 18.2-387. Nevertheless, breast feeding would be what the Commonwealth's Attorney described as a "technical'' violation of the county ordinance.

. There is a discussion of this issue in the federal court opinion; the federal judge found the County’s actions in this regard "unreasonable, unbecoming of government and unfair." Colonial First Properties, 166 F.Supp.2d at 1082.

. Included in the record are 1982 staff memoranda from the Henrico County police discussing the need for an ordinance to prosecute "urinating or defecating in public, swimming in the nude in public, exposing one's buttocks (mooning) in public, or generally being nude in public.” Inter-Office Memorandum from Lieutenant C.S. McCray, Platoon A, Henrico County Police Department, to Chief of Police (July 8, 1982). Another member of the police force noted that "we do need some type of ordinance to control urinating in public.” Inter-Office Memorandum from Colonel L.T. Sheppard, Henrico County Police Department, to Commonwealth’s Attorney and County Attorney (July 12, 1982). The Henrico County Board of Supervisors unanimously approved the ordinance on September 8, 1982. Minutes, Henrico County, Virginia Board of Supervisors (Sept. 8, 1982).

. While the majority argues that the outcome of the instant case is controlled by Wayside Rest., Inc. v. City of Virginia Beach, 215 Va. 231, 208 S.E.2d 51 (1974), I disagree. Wayside was decided over twenty years before the United States Supreme Court’s decisions in Barnes and Pap’s A.M. Additionally, because this dissent is grounded in a selective enforcement analysis only, I do not address appellants' broader constitutional challenges. As the Supreme Court stated in Wayside, ”[W]e reserve decision to another day, upon full and adequate record, on any concrete problems of constitutional dimension under the First Amendment which might arise from future application of the ordinance.” Id. at 236, 208 S.E.2d at 55. They did not, in that case, reach this issue.

. In addition, "time, place and manner” regulations must also be content-neutral and narrowly tailored. See Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).